UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___11/21/2017___

-----------------------------------------------------------------X

JOSE LUIS PASTOR,                            :
                                             :
                         Plaintiff,          :       **OPINION AND ORDER**
                                             :
          -v-                                :       16-CV-7264 (JLC)
                                             :
ALICE CLEANERS, INC., *et al.*,              :
                                             :
                         Defendants.         :
-----------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

On September 18, 2017, the Court conducted a bench trial in this wage-and-hour case and found defendants Alice Cleaners, Inc., doing business as Alice Dry Cleaning, and Chan Choi liable to plaintiff Jose Luis Pastor, but reserved decision as to damages. For the reasons set forth below, the Court awards Pastor $57.633.40 in damages under New York Labor Law ("NYLL"), comprised of $14,554.22 in unpaid overtime compensation; $14,554.22 in liquidated damages; $10,000 in statutory penalties for wage statement and wage notice violations; pre-judgment interest of $4,367.46; $13,757.50 in attorneys' fees; and $400 in costs.

## I.    Background

Pastor brought this action to recover unpaid minimum wages, overtime wages, liquidated damages, interest, and attorneys' fees and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and NYLL, §§ 190 and 650 *et seq.*, from Alice Cleaners and Choi. Complaint, dated September 16, 2016, Dkt.

1

No. 1, ¶ 11.[1]  Following a bench trial on September 18, 2017, the Court found that

Alice Cleaners and Choi were liable to Pastor and directed the parties to make post-

trial submissions with respect to damages.  Trial Transcript ("Tr.") at 102.[2]  On

September 25, 2017, Pastor filed a post-trial memorandum, Pl. Post-Trial, and on

October 6, 2017, defendants filed a reply memorandum, Dkt. No. 51, taking no

position as to Pastor's calculations regarding damages or attorneys' fees and costs.

The following findings of fact regarding liability are repeated here for the

purpose of providing necessary context in the assessment of damages:[3]

1. Pastor worked at Alice Cleaners from November 7, 2011 to April 7,
   2017.  Tr. at 103–04.

2. Pastor generally worked from 7:30 a.m. to 4:30 p.m. Monday through
   Friday and 8:00 a.m. to 4:30 p.m. Saturday, for a total of 53.5 hours
   per week.  Tr. at 105.

3. For this work, Pastor was paid a weekly salary in cash.  From
   November 2011 through May 2012, Pastor's weekly salary was $550,

---

[1] A third defendant, Michael Sakhalsy, has not appeared in the case.

[2] Although there is no record of either party having ordered the transcript and it is
not on the docket, Pastor does make two citations to the transcript in his papers.
Post-trial Memorandum, dated Sept. 25, 2017, Dkt. No. 50 ("Pl. Post-Trial"), at 1, 6.
In any event, the Court ordered the transcript for its own review and cites to it as
necessary throughout this Opinion and Order.

[3] The Court will not recount its findings of fact and conclusions of law in any detail
here.  For a fuller recitation, see Tr. at 101–10.

from June 2012 through May 2013, it was $580, and from June 2013 until the end of his tenure, it was $600.  Tr. at 106.

4.      Every year, during the winter months of January, February, and March, Pastor worked five days a week rather than six, and his weekly salary during those months was $100 less than his prevailing weekly salary during the non-winter months.  Tr. 106–07.

5.      Pastor took paid holidays on the Fourth of July, Labor Day, Veterans Day, Thanksgiving, Christmas, and New Year's Day.  Tr. at 107.

6.      After Pastor filed his complaint in this lawsuit on August 16, 2016, his schedule changed such that he would leave work earlier, between 2:30 p.m. and 3:00 p.m.  Dkt. No. 49.

7.      Alice Cleaners and Choi did not provide Pastor with any wage notices, pay stubs, or written records that comply with NYLL from November of 2011 until 2015.  Tr. at 108.

8.      Pastor was not regularly required to keep track of his time, nor was his time tracked by Alice Cleaners or Choi in a uniform and consistent manner.  The defendants did not provide any evidence that they had consulted with anyone, including with counsel or with the New York or federal Departments of Labor, or relied on any advice of counsel regarding their wage practices.  Tr. at 109–10.

## II.     Damages

Pastor seeks $55,518.83 in damages for unpaid overtime, $55,518.83 in liquidated damages, $10,000 total for wage notice and wage statement violations, and pre-judgment interest.  Pl. Post-Trial at 6.

While "plaintiffs may not recover under both the FLSA and NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief." *Ni v. Bat-Yam Food Servs. Inc.*, No. 13-CV-7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016); *see also, e.g.*, *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *5 (S.D.N.Y. Mar. 26, 2015), *adopted by*, Order, dated Aug. 9, 2012, Dkt. No. 20.  Because NYLL allows for greater or equal recovery than the FLSA at all relevant times during Pastor's tenure at Alice Cleaners, the Court will apply NYLL for all damages calculations.[4]

---

[4] Although the complaint alleged violations of the minimum wage provisions of the FLSA and NYLL, at trial, Pastor offered no evidence that he made less than the minimum wage required, and his post-trial submission seeks damages only for overtime owed.  Pl. Post-Trial at 6.  Pastor's regular hourly rate throughout his employment was always higher than the applicable minimum hourly wage rate. *Compare* appendix attached to this Opinion and Order (Pastor's regular hourly rate) *with* New York State Department of Labor, Labor Statistics, History of the Hourly Minimum Wage, https://labor.ny.gov/stats/minimum_wage.shtm (hourly wages during applicable periods ranging from $7.25 in 2011 to $9.70 until December 31, 2016) (last visited Nov. 20, 2017); 12 N.Y.C.R.R. 142-2.1 (setting minimum hourly wage of $11.00 in New York City after December 31, 2016 for employers with eleven or more employees and $10.50 for employers with fewer employees).  Accordingly, Pastor has waived his right to, and in any event is not entitled to, any unpaid minimum wages.

### A.    Overtime Pay

Under NYLL, a plaintiff "must be paid one and one-half times his regular hourly rate for every hour worked over forty hours per week." *Pinovi v. FDD Enterprises, Inc.*, No. 13-CV-2800 (GBD), 2015 WL 4126872, at *5 (S.D.N.Y. July 8, 2015); *see also* 12 N.Y.C.R.R. § 142–2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate[.]").

"An employer is not exempt from paying overtime wages merely because it pays the employee a weekly salary." *Amaya v. Superior Tile & Granite Corp.*, No. 10-CV-4525 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012) ("The fact that Plaintiffs regularly worked more than 50 hours per week does not indicate that the employees' weekly salary was intended to include the overtime premium required by the FLSA and [NYLL].").  While "[a]n employer may be exempt from the overtime requirement if there is a salary agreement between employer and employee that sufficiently assures that the employee will receive at least the minimum wage per week," a fixed weekly salary "will 'not be deemed to include an overtime component in the absence of an express agreement.'" *Wong v. Hunda Glass Corp.*, No. 09-CV-4402 (RLE), 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010) (quoting *Giles v. City of New York,* 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)). "An agreement for a fixed weekly salary for more than 40 hours of work per week only complies with . . . [NYLL] if there is an explicit understanding between the employer and employee as to regular and overtime rates." *Amaya,* 2012 WL 130425, at *9 (citing *Giles,* 41 F. Supp. 2d at 316–17).

Pastor credibly testified that, prior to beginning his job, he had discussed the terms of his employment with the person who hired him, and that the two had no discussion about whether the weekly salary included an overtime component for the hours Pastor would work in excess of 40 per week.  Tr. at 13.  This testimony was undisputed, and defendants did not prove that any explicit understanding or express agreement existed between Pastor and Alice Cleaners regarding regular and overtime hourly rates.  Accordingly, the Court finds that damages are due for unpaid overtime.  *See, e.g.*, *Amaya,* 2012 WL 130425, at *9 (awarding damages for unpaid overtime to employee with fixed salary); *Wong*, 2010 WL 2541698, at *3-4 (same).

### 1.    Regular Hourly Rate

"The first step in determining damages is to determine what the [regular] hourly rate was for the week in question. The [regular] hourly rate is arrived at by dividing the gross wages [a] plaintiff received from Defendants for a week by the hours worked by Plaintiff[ ]." *Amaya*, 2012 WL 130425, at *9 (finding plaintiff paid $720 for 53 hour workweek had hourly rate of approximately $13.58); *see also* 12 N.Y.C.R.R. § 142–2.16 ("When an employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings."); *see also, e.g.*, *Peralta v. M & O Iron Works,* 12-CV-3179 (ARR) (RLM),

2014 WL 988835, at *8 (E.D.N.Y. Mar. 11, 2014) (finding plaintiff paid $380 for 56 hours of work had regular hourly rate of $6.79 per hour).[5]

The Court found that Pastor was generally paid $550, then $580, then $600 for a 53.5 hour workweek; that in the winter months, Pastor was paid $450, then $480, then $500 for a 45 hour workweek; and that, after he filed his complaint, Pastor was paid $600 for a 41.5 hour workweek, except for in the winter months, when he was paid $500 for less than 40 hours a week of work.[6]  These weekly salaries result in regular hourly rates between $10.00 and $14.46, as indicated in the appendix attached to this Opinion and Order.

### 2.  Overtime Damages

Under New York law, for every hour worked in a week over 40, an employee should be paid a wage rate of one and one-half times the employee's regular hourly rate.  *See* 12 N.Y.C.R.R. § 142–2.2.  "The measure of damages is the difference between what [a plaintiff] should have been paid under the [NYLL] and the amount that [a plaintiff was] actually paid."  *Amaya*, 2012 WL 130425, at *9.

---

[5] By contrast, New York regulations calculate the regular hourly rate of hospitality industry employees by dividing total weekly earnings "by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-3.5.

[6] Given the Court's finding, restated in section I, that Pastor worked one day less during winter months, the Court has calculated the hours Pastor worked in a winter week by deducting 8.5 hours from the total number of hours worked in a non-winter week.  In light of the Court's finding that Pastor left work earlier after his complaint was filed on August 16, 2016, the Court is calculating the hours Pastor worked after the filing using an out-time of 2:30 p.m.

Pastor's regular rate determines his overtime rate (the rate he should have been paid for every hour he worked per week in excess of 40), and therefore his overtime "premium" rate (the difference between what he should have been paid and what he was actually paid).   As indicated in the appendix, Pastor's regular hourly rates result in overtime premium hourly rates between $5.00 and $7.23.

To calculate damages for a given period, the overtime premium hourly rate is multiplied by the number of hours worked in excess of 40 per week; that product is multiplied by the approximate number of weeks in a given period; and finally, where appropriate, a sum is subtracted from the total to account for overtime that was not accrued during weeks in which Pastor took paid holidays. *See, e.g.*, *Peralta,* 2014 WL 988835, at *9 ("The amount due to plaintiff in unpaid overtime premiums for this time period is calculated by determining half of his [regular hourly rate], which was above minimum wage. This number . . . is then multiplied by . . . the amount of weekly overtime worked by plaintiff . . . and then multiplied by . . . the number of weeks in this particular time period.").

As set forth in the appendix, consist with this formula, Pastor is due $14,554.22 in damages for unpaid overtime.

Pastor seeks an amount well in excess of what the Court awards here. Pastor's approach to calculating damages, which results in a significantly higher regular rate (and thus a much higher overtime rate) and also requires the Court to treat every hour that Pastor worked in excess of 40 per week as entirely uncompensated, is unavailing.

8

Pastor would have the Court apply a presumption under the FLSA and NYLL that a weekly salary only covers 40 hours. Pl. Post-Trial at 6 (citing *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-CV-9353 (PAC), 2015 WL 1881080 (S.D.N.Y. Apr. 24, 2015); *Guallpa v. N.Y. Pro Signs Inc.,* No. 11-CV-3133 (LGS) (FM), 2014 WL 2200393 (S.D.N.Y. May 27, 2014), *adopted by*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); *Amaya*, 2012 WL 130425, at *9).

However, it would be odd to apply such a presumption given the facts in this case, as Pastor testified that he discussed the job's hours and salary in advance of starting work, and Pastor was compensated above minimum wage at all times (as discussed at footnote four). Pastor testified that, before he started at Alice Cleaners, he was told that the job paid a salary of $550 per week and that he would be expected to work from 7:30 a.m. to 4:30 or 5:00 p.m., Monday through Friday, and from 8:00 a.m. to 4:30 or 5:00 p.m. on Saturdays. Tr. at 11–13. Thus, according to Pastor's own testimony, he accepted a job that required between 53.5 to 56.5 hours of work per week for a weekly salary of $550. In *Perez*, one of the cases Pastor cites, the court found that the defendants had not overcome the presumption that a salary covered a 40-hour workweek because, unlike in this case, the record was "completely devoid of any evidence of an agreement or understanding between Plaintiffs and Defendants regarding what the weekly salary was intended to cover." *Perez*, 2015 WL 1881080, at *2.

Additionally, although Pastor cites *Amaya* in support of his argument, the *Amaya* court actually applies precisely the approach employed by this Court. *See*

9

Memorandum Opinion and Order, 10-CV-4525 (PGG), dated Jan. 17, 2012, Dkt. No. 39, Appendix at 1 (dividing weekly salary by hours worked to determine applicable hourly rate and overtime premium, and then multiplying premium by overtime hours to calculate damages for unpaid overtime).

As discussed, Alice Cleaners and Choi did not establish the existence of an explicit understanding as to how Pastor's fixed weekly salary would provide overtime compensation equal to one and one-half times Pastor's regular hourly rate, and thus Pastor is entitled to the overtime premium he was not paid. *See, e.g.*, *Amaya*, 2012 WL 130425, at *9; *Peralta,* 2014 WL 988835, at *9; *Wong*, 2010 WL 2541698, at *3–4 (calculating damages for unpaid overtime by dividing employee's fixed salary by number of hours worked and awarding only unpaid overtime premium; *Galicia v. 63-68 Diner Corp.,* No. 13-CV-3689 (PKC), 2015 WL 1469279, at *5 (E.D.N.Y. Mar. 30, 2015) (awarding only overtime premium for 21.5 hours worked in excess of 40 per week to plaintiff whose minimum wage damages "already account[ed] for a portion of the total overtime compensation due"). The Court is aware that at least one other court in this District (albeit in the context of an inquest) has approached this calculation differently, *see, e.g.*, *Guallpa*, 2014 WL 2200393, at *3-5 (calculating hourly rates and damages after presuming weekly salary covered only 40 hours despite plaintiff's concession that he entered into agreement with employer that wages would cover 60-hour workweek), but is not aware of any binding Second Circuit or Supreme Court precedent that runs contrary to the approach taken here.

10

**B.      Liquidated Damages**

NYLL authorizes liquidated damages equal to "one hundred percent of the total amount of the wages found to be due," "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law §§ 198(1-a).[7]

At trial, the Court found that Alice Cleaners and Choi had not proved a good faith basis to believe that the wage practices were in compliance with the law, and thus that liquidated damages were in order.  Tr. at 109–10.  Accordingly, Pastor is entitled to liquidated damages of 100% of the total $14,554.22 due for unpaid overtime.

**C.      Wage Notice and Wage Statement Violations**

NYLL requires employers to provide employees, at the time of hiring, with a wage notice containing basic information such as rate of pay; prior to February 27, 2015, employers were required to provide employees with these notices annually. N.Y. Lab. Law § 195(1)(a).[8]  Employers are also required to provide employees with

---

[7] Pastor seeks liquidated damages under NYLL and does not seek cumulative liquidated damages under the FLSA.  Joint Pretrial Order, dated Aug. 23, 2017 (Dkt. No. 47), at 5; Pl. Post-trial at 6.  The Second Circuit recently addressed a split among district courts by holding that a plaintiff could not recover cumulative liquated damages under NYLL and the FLSA because "today . . . the liquidated damages provisions are identical in all material respects, serve the same functions, and redress the same injuries."  *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016) (summary order).

[8] In 2014, the law was amended and the annual requirement was removed.  *See* 2014 N.Y. Sess. Laws Ch. 537 (A.8106–C) (McKinney's).

a wage statement with each payment of wages.  N.Y. Lab. Law § 195(3).  Since

February 27, 2015, an employee who was not provided a wage notice within ten

business days of the first day of employment can recover damages of $50 for each

workday that a violation occurs or continues to occur, not to exceed $5,000, and an

employee can recover $250 for each workday that a wage statement violation occurs

or continues to occur, not to exceed $5,000.  N.Y. Lab. Law §§ 198(1-b), (1-d).

Alice Cleaners and Choi did not provide Pastor with a wage statement that

complied with NYLL for more than 20 workdays under the current statutory

damages scheme, or with a wage notice that complied with NYLL for more than 100

workdays under the current scheme.  Tr. at 108.[9]  As such, Pastor is entitled to

$5,000 in damages for each of the two violations, for a total of $10,000.

### D.    Pre-judgment Interest

"[C]ourts typically award prejudgment interest on damages for NYLL

violations."  *Pineda v. Frisolino, Inc.*, No. 15-CV-3774 (GBD), 2017 WL 3835882, at

---

[9] At trial, defendants offered disputed documentary evidence that Pastor had been
provided with a wage notice in 2015, along with a purported wage notice from 2016,
as defendants' Exhibit D-6.  Tr. at 60, 108.  The Court found that Pastor was not
provided with any wage notice from November 2011 until 2015, and noted that the
disputed evidence was "immaterial" because there was no dispute regarding the
violation from 2011 to 2015.  *Id*. at 108.  The Court additionally finds here that the
documentary evidence does not prove compliance with the law because, even if
defendants' testimony were credited, the notices do not comply with the
requirements of NYLL.  Specifically, the purported 2015 and 2016 notices do not
contain accurate rates of pay, and they list Pastor's regular hourly rate as $9 and
his overtime rate as $13.50, but his wages were higher.  *See* appendix (Pastor's
hourly rates); N.Y. Lab. Law § 195(1)(a) (wage notice must contain rate of pay).

*13 (S.D.N.Y. Aug. 29, 2017) (quoting *McLean v. Garage Mgmt. Corp.*, No. 09-CV-9325 (DLC), 2012 WL 1358739, at *10 (S.D.N.Y. Apr. 19, 2012)).  Pre-judgment interest is appropriate even when a plaintiff is also awarded liquidated damages under NYLL.  *See, e.g., id.* (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016), *adopted by*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016)).  Pre-judgment interest applies only to the actual, compensatory damages, and not to liquidated damages or to damages recovered due to violations of wage statement or wage notice provisions.  *Salustio v. 106 Columbia Deli Corp.*, No. 15-CV-6857 (GWG), 2017 WL 3736695, at *14 (S.D.N.Y. Aug. 30, 2017) (pre-judgment interest "not available for violations of the wage statement or wage notice provisions" and "applies only to the amount of underpayment of wages, not the liquidated damages"); *Xochimitl*, 2016 WL 4704917, at *18 (interest applies only to compensatory damages).

New York law provides that interest shall be at the rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  "Where damages are incurred 'at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.'" *Xochimitl*, 2016 WL 4704917, at *18 (quoting N.Y. C.P.L.R. § 5001).  "Simple prejudgment interest is calculated from a singular, midpoint date and by multiplying the principal by the interest rate by the time period – from a singular, midpoint date – up until and including the date judgment is entered." *Id.* (alterations omitted) (quoting

*Maldonado*, 2012 WL 1669341, at *11).  "Plaintiffs should receive prejudgment interest calculated from the midpoint of their employment to the date of entry of judgment at an interest rate of nine percent per year."  *Pineda*, 2017 WL 3835882, at *13; *see also, e.g., Xochimitl*, 2016 WL 4704917, at *18.

Pastor began working for defendants on November 7, 2011, and his employment ended on April 7, 2017.  The approximate midpoint date between those two points for the purpose of calculating pre-judgment interest is July 23, 2014. Consequently, Pastor is entitled to $4,367.46, which is pre-judgment interest on the principal of $14,554.22 calculated at an interest rate of nine percent per year from July 23, 2014 to the date of entry of judgment.

## III.    Attorneys' Fees and Costs

Pastor requests an award of attorneys' fees in the amount of $22,297.50 and costs in the amount of $2,125.00.  Pl. Post-Trial, at 8, Ex. B at 1-3.  Pastor is represented by the firm of Michael Faillace & Associates, P.C., and in support of his request, Pastor has provided a "billing sheet" from the firm as an exhibit to his post-trial memorandum.  *Id*.  NYLL provides for fee-shifting that entitles a prevailing plaintiff to recover his reasonable attorneys' fees and costs.  N.Y. Lab. Law §§ 198(1), 663(1); *see also, e.g.*, *Xochimitl*, 2016 WL 4704917, at *19.

### A.    Attorneys' Fees

"In order to determine the appropriate fee award, courts typically start by determining the so-called lodestar amount, or 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'"  *Yuquilema v.*

*Manhattan's Hero Corp.*, No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106, at *13 (S.D.N.Y. Aug. 20, 2014) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011)), *adopted by*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014).   As a general matter, "[b]oth the Second Circuit and the Supreme Court have held that the lodestar . . . creates a presumptively reasonable fee." *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012) (quoting *Millea,* 658 F.3d at 166) (quotation marks and alteration omitted).

A plaintiff must "document the application [for fees and costs] with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Assn'n for Retarded Children, Inc., v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *see also Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010).   "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Angamarca v. Pita Grill 7 Inc.,* No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *11 (S.D.N.Y. Aug. 2, 2012), *adopted by*, Order, dated Dec. 14, 2014, Dkt. No. 39.   A court may also rely on its own knowledge of local comparable rates. *See, e.g., Yuquilema,* 2014 WL 4207106, at *13; *Adorno v. Port Authority of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010).   Counsel for the prevailing party must make a good faith effort to exclude excessive, redundant, or unnecessary hours from the fee request. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 n.6 (2d Cir. 2008).   Ultimately, a court's discretion

to set a fee award is broad. *Hensley v. Eckethart*, 461 U.S. 424, 437 (1989);

*Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) ("We afford a

district court considerable discretion in determining what constitutes reasonable

attorney's fees in a given case, mindful of the court's superior understanding of the

litigation . . . .") (quotation marks omitted).

### 1.    Reasonable Hourly Rate

"'The reasonable hourly rate is the rate a paying client would be willing to

pay,' bearing in mind that a 'reasonable, paying client wishes to spend the

minimum necessary to litigate the case effectively.'" *Yuquilema,* 2014 WL 4207106,

at \*13 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,

522 F.3d 182, 190 (2d Cir. 2008)). "To assess the reasonable rate, the Court

considers the prevailing market rates 'for similar services by lawyers of reasonably

comparable skill, experience and reputation.'" *See Maldonado*, 2012 WL 1669341,

at \*12 (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).  Courts in

this District have determined in recent cases that a fee in the range of $250 to $450

is appropriate for experienced litigators in wage-and-hour cases.  *See Cortes v. New

Creators*, No. 15-CV-5680 (PAE), 2016 WL 3455383, at \*7 (S.D.N.Y. Jun. 20, 2016);

*Kernes v. Global Structures*, 15-CV-659 (CM) (DF), 2016 WL 880199, at \*10

(S.D.N.Y. Feb. 9, 2016), *adopted by*, Memo Endorsement, dated Mar. 1, 2016, Dkt.

No. 27; *Yuquilema*, 2014 WL 4207106, at \*14 (collecting cases).

Pastor seeks to recover fees for work performed by three attorneys: Michael

Faillace, Colin Mulholland, and Marisol Santos.  Pl. Post-Trial, at 7-8.  Faillace is

16

the managing member of the firm and has been in practice since 1983.  *Id.* at 7.  In addition to serving as in-house counsel for International Business Machines Corporation between 1983 and 2000, he has taught employment discrimination at Fordham University and Seton Hall University law schools and speaks on employment law matters.  *Id.*  Pastor seeks reimbursement for Faillace's fees at his billing rate of $450 an hour.  *Id.*  Mulholland, who tried the case before the Court, has been practicing law since February of 2013 and has been with the firm, as an associate, since May of 2017.  *Id.* at 8.  Pastor seeks reimbursement for Mulholland's fees at the rate of $350 per hour.  *Id.*  Marisol Santos graduated from law school in 2013 and has been with the firm since October of 2016.  *Id.* at 7-8. Pastor seeks reimbursement for Santos' fees (for a total of 0.4 hours of work) at the rate of $250 an hour.  *Id.*, Ex. B at 1.

This Court recently approved a rate of $425 per hour for Faillace.  *Xochimitl*, 2016 WL 4704917, at *20.  This rate is consistent with recent rates used by other courts in this District, particularly in the context of straightforward cases like this one, which fall squarely within Faillace's wage-and-hour practice.  *See, e.g.*, *Portillo v. New Ko-Sushi Japanese Rest., Inc.*, No. 16-CV-2429 (JMF), 2017 WL 3995602, at *1 (S.D.N.Y. Sept. 8, 2017) (approving $400 for Faillace in "fairly straightforward wage-and-hour case"); *Sevilla v. Nekasa Inc.,* No. 16-CV-2368 (AJP), 2017 WL 1185572, at *5 (S.D.N.Y. Mar. 30, 2017) (reducing $450 to $425 for Faillace, noting that case was not complex);  *Hernandez v. JRPAC Inc.*, No. 14-CV-4176 (PAE), 2017 WL 66325, at *3 (S.D.N.Y. Jan. 6, 2017) (reducing $450 to $400 for Faillace and

noting that case law "commonly approves hourly rates of $300-$400 for partners in FLSA cases").  Accordingly, the Court will use $425 as the reasonable hourly rate to apply to Mr. Faillace's work.[10]

As to Mulholland, the Court finds that the proposed $350 per hour rate is higher than the case law supports.  As noted above, courts find rates in the $250 to $450 range reasonable for experienced litigators working on wage-and-hour cases. Mulholland is an associate who has been practicing for less than five years, and has been at the firm for only six months.  Accordingly, the Court will use $250 per hour as the reasonable rate to apply to Mulholland's work.  *See, e.g.*, *Hernandez*, 2017 WL 66325, at *4 (2017 decision following bench trial and approving $250 hourly rate for 2011 and 2010 law school graduates with two and three years of experience, respectively, in wage-and-hour cases).  The Court finds the $250 per hour rate billed by Santos reasonable, as she has a similar number of years of experience and the rate is consistent with other recent awards.  *See, e.g. Portillo*, 2017 WL 3995602, at *1 (approving $200 per hour for Santos); *Quito v. El Pedragal Rest., Corp.,* No. 16-CV-6634 (BMC), 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (same).

---

[10] Despite Judge Engelmayer's directive in *Hernandez* that, "in future cases, the [Faillace] [f]irm alert reviewing courts to *all* recent cases in which attorneys' fees have been awarded based on the work of the relevant attorneys, including cases in which an hourly billing rate below that requested in the case at hand has been used," *Hernandez*, 2017 WL 66325, at *4, Pastor's counsel has failed to do so here.

## 2.    Reasonable Hours Expended

"After determining the appropriate hourly billing rate, the court calculates

the hours reasonably expended." *Maldonado*, 2012 WL 1669341, at *13 (internal

quotation marks omitted).  In determining the reasonable number of hours required

by a case, the critical inquiry is "whether, at the time the work was performed, a

reasonable attorney would have engaged in similar time expenditures." *Grant v.*

*Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must make "a conscientious and

detailed inquiry into the validity of the representations that a certain number of

hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d

131, 134 (2d Cir. 1994).  "If the Court finds that some of the claimed hours are

'excessive, redundant or otherwise unnecessary,' it may reduce the number of

reasonable hours accordingly." *Bumble & Bumble, LLC, v. Pro's Choice Beauty*

*Care, Inc.*, No. 14-CV-6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17,

2016) (quoting *Hensley,* 461 U.S. at 434), *adopted by,* 2016 WL 1717215 (S.D.N.Y.

Apr. 27, 2016).

Pastor seeks to recover fees for a total of 60.35 hours, 12.15 of which were

billed by Faillace, 47.8 by Mulholland, and 0.4 by Santos.  Pl. Post-Trial, Ex. B at 1-

2.  The Court is mindful that the case was litigated to trial and finds the hours, for

the most part, reasonable.  However, the Court makes certain reductions as follows.

The 7.75 hours Faillace spent researching, drafting, finalizing, and filing the

complaint are excessive.  *See, e.g.*, *Sevilla*, 2017 WL 1185572, at *8 ("[T]he Court

finds that eight hours spent on a routine FLSA/NYLL complaint is excessive,

particularly for [Faillace's firm,] a law firm that routinely handles such cases.");
*Portillo*, 2017 WL 3995602, at *1 ("[T]he amount of time Mr. Faillace spent drafting,
revising, and finalizing the complaint—a total of 11.6 hours—was excessive and
unreasonable. This case was a fairly straightforward wage-and-hour case.  That is
the bread and butter of Mr. Faillace's firm[.] . . . The Court finds that it should have
taken Mr. Faillace three hours, at most, to perform those tasks.").  Furthermore, a
reduction in hours is warranted because "[f]iling a document is plainly a task that
could have been performed by a junior associate or paralegal, billing at a lower
hourly rate." *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-CV-7850
(VEC) (DF), 2016 WL 8650464, at *19 (S.D.N.Y. Nov. 7, 2016), *adopted by*, 2017 WL
1194682 (S.D.N.Y. Mar. 30, 2017).  Given Faillace's experience with these matters,
and the straightforward nature of this single-plaintiff case, the Court finds that it
should have taken Faillace three and a half hours, at most, to perform those tasks.
The Court awards three and a half, rather than three hours, as one of the entries at
issue (for 0.9 hours) bears the description "Meeting with client/revised complaint,"
and thus presumably the time expended encompasses some work that was not
related to the complaint.  Pl. Post-Trial, Ex. B at 1.

Additionally, the Court finds that certain entries are so vague as to merit
reduction.  Specifically, between September 12 and September 17, 2017, in the week
before trial, Mulholland billed a total of 13.6 hours in five separate entries that all
bear the description "Trial Prep" or "Trial Preparation."  Pl. Post-Trial, Ex. B at 2.
These entries do not explain what tasks were completed or the "nature of the work

done." *Carey*, 711 F.2d at 1148.  The Court can infer from the record and from the billing sheet certain tasks that did <u>not</u> constitute those 13.6 hours: at that point, pre-trial filings had already been submitted, Dkt Nos. 33-38; Mulholland billed a separate 1.2 hours on September 8 for "Trial Preparation-Prepare Draft of direct, review Plaintiff DEPOSITION of;" and Faillace billed 2.8 hours on September 13 for "Meeting with client-trial prep."  Pl. Post-Trial, Ex. B at 2.  Without a description of what tasks constituted Mulholland's preparation for trial between September 12 and 17, the Court cannot readily evaluate whether the time expended was excessive, and thus the Court finds it appropriate to reduce the hours by about half, to seven hours.  *See, e.g.*, *Garcia v. Bad Horse Pizza, Inc.*, No. 14-CV-8858 (WHP), 2017 WL 192955, at *6 (S.D.N.Y. Jan. 18, 2017) (reducing fees in part due to vague entries); *Severstal Wheeling, Inc. v. WPN Corp.*, No. 10-CV-954 (LTS), 2016 WL 1611501, at *4 (S.D.N.Y. Apr. 21, 2016) (same); *Brennan v. New York Law Sch.*, No. 10-CV-338 (DLC) (HBP), 2012 WL 4177736, at *8 (S.D.N.Y. Aug. 15, 2012) (same) (collecting cases), *adopted by*, 2012 WL 4195826 (S.D.N.Y. Sept. 20, 2012).  This is especially warranted given that this was a trial in which only three witnesses (Pastor, Choi, and a manager) testified.

For the foregoing reasons, the Court finds that it is appropriate to award fees for 7.9 hours of work performed by Faillace at an hourly rate of $425, for 41.2 hours of work performed by Mulholland at an hourly rate of $250, and for 0.4 hours of work performed by Santos at an hourly rate of $250.  Therefore, the Court awards Pastor attorneys' fees of $13,757.50.

**B.    Costs**

Finally, Pastor seeks to recover $2,125 in costs.  Pl. Post-Trial, Ex. B at 3.  An

employee who prevails in a wage-and-hour action is entitled to recover costs.  N.Y.

Lab. Law § 663(1).  Costs are defined as "those reasonable out-of-pocket expenses

incurred by attorneys and ordinarily charged to their clients."  *Leblanc-Sternberg v.*

*Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  "As with attorneys' fees, [a] requesting

party must substantiate the request for costs."  *Guo v. Tommy's Sushi, Inc.*, No. 14-

CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); *see also*, *e.g.*,

*Euceda v. Preesha Operating Corp.*, No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490,

at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party

is not entitled to recover costs . . . .  Plaintiff has failed to provide any

substantiation, such as invoices or receipts, documenting the costs he now seeks to

recover."), *adopted by*, 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

Pastor seeks reimbursement for the Court's $400 filing fee, three separate

$75 process-servicer fees, and $1,500 in trial interpreter fees.  Pl. Post-Trial, Ex. B

at 3.  The Court takes judicial notice of the $400 filing fee.  *Sevilla*, 2017 WL

1185572, at *8 (taking judicial notice of filing fee).  While service fees are, in theory,

compensable, here "the process-server fees [will] not be awarded" as "apart from its

own '[billing sheet],' itemizing these fees, the Faillace Firm has failed to submit any

underlying documentation supporting that the fees were incurred."  *Almanzar*, 2016

WL 8650464, at *21; *see also, e.g.*, *Sevilla*, 2017 WL 1185572, at *8 (refusing to

award costs absent supporting documentation and collecting cases).  Similarly, in

the absence of supporting documentation, the Court will not award costs for the interpreters' fees.

## IV. Conclusion

For the foregoing reasons, the Court awards Pastor $57,633.40 in damages and attorneys' fees and costs against Alice Cleaners and Choi pursuant to NYLL, as follows:

1.  $14,554.22 in unpaid overtime compensation;

2.  $14,554.22 in liquidated damages;

3.  $10,000 in statutory penalties for wage statement and wage notice violations;

4.  Pre-judgment interest of $4,367.46, calculated using a principal of $14,554.22 at an interest rate of nine percent per year from July 23, 2014 to the date of entry of judgment; and

5.  $13,757.50 in attorneys' fees and $400 in costs.

The Clerk is directed to enter judgment for the plaintiff consistent with this Opinion.

**SO ORDERED.**

Dated: November 21, 2017
      New York, New York

JAMES L. COTT
United States Magistrate Judge

23

## Pastor v. Alice Cleaners, Inc.
### No. 16-CV-7264 (JLC)
### Appendix

**Damages Calculation**

| period | weekly wage | hours worked per week | regular hourly rate | overtime premium hourly rate | overtime hours worked per week | unpaid overtime per week | approx weeks in period | unpaid overtime prior to holiday deduction | holidays during period | unearned overtime due to holidays | unpaid overtime total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/7 to 12/31/11 | $ 550 | 53.5 | $ 10.28 | 5.14 | 13.5 | $ 69.39 | 8 | $ 555.14 | 2 | $ 92.52 | $ 462.62 |
| 1/1 to 3/31/12 | $ 450 | 45 | $ 10.00 | 5.00 | 5 | $ 25.00 | 13 | $ 325.00 | 0 | $ - | $ 325.00 |
| 4/1 to 5/31/12 | $ 550 | 53.5 | $ 10.28 | 5.14 | 13.5 | $ 69.39 | 9 | $ 624.53 | 0 | $ - | $ 624.53 |
| 6/1 to 12/31/12 | $ 580 | 53.5 | $ 10.84 | 5.42 | 13.5 | $ 73.18 | 30 | $ 2,195.33 | 3 | $ 146.36 | $ 2,048.97 |
| 1/1 to 3/31/13 | $ 480 | 45 | $ 10.67 | 5.33 | 5 | $ 26.67 | 13 | $ 346.67 | 1 | $ 26.67 | $ 320.00 |
| 4/1 to 5/31/13 | $ 580 | 53.5 | $ 10.84 | 5.42 | 13.5 | $ 73.18 | 9 | $ 658.60 | 0 | $ - | $ 658.60 |
| 6/1 to 12/31/13 | $ 600 | 53.5 | $ 11.21 | 5.61 | 13.5 | $ 75.70 | 30 | $ 2,271.03 | 5 | $ 252.34 | $ 2,018.69 |
| 1/1 to 3/31/14 | $ 500 | 45 | $ 11.11 | 5.56 | 5 | $ 27.78 | 13 | $ 361.11 | 1 | $ 27.78 | $ 333.33 |
| 4/1 to 12/31/14 | $ 600 | 53.5 | $ 11.21 | 5.61 | 13.5 | $ 75.70 | 40 | $ 3,028.04 | 5 | $ 252.34 | $ 2,775.70 |
| 1/1 to 3/31/15 | $ 500 | 45 | $ 11.11 | 5.56 | 5 | $ 27.78 | 12 | $ 333.33 | 1 | $ 27.78 | $ 305.56 |
| 4/1 to 12/31/15 | $ 600 | 53.5 | $ 11.21 | 5.61 | 13.5 | $ 75.70 | 40 | $ 3,028.04 | 5 | $ 252.34 | $ 2,775.70 |
| 1/1 to 3/31/16 | $ 500 | 45 | $ 11.11 | 5.56 | 5 | $ 27.78 | 13 | $ 361.11 | 1 | $ 27.78 | $ 333.33 |
| 4/1 to 8/15/16 | $ 600 | 53.5 | $ 11.21 | 5.61 | 13.5 | $ 75.70 | 19 | $ 1,438.32 | 1 | $ 50.47 | $ 1,387.85 |
| 8/16 to 12/31/16 | $ 600 | 41.5 | $ 14.46 | 7.23 | 1.5 | $ 10.81 | 20 | $ 216.87 | 4 | $ 43.37 | $ 173.49 |
| 1/1 to 3/31/17 | $ 500 | 35 | $ 14.29 | 7.14 | - | $ - | 13 | $ - | 0 | $ - | $ - |
| 4/1 to 4/7/17 | $ 600 | 41.5 | $ 14.46 | 7.23 | 1.5 | $ 10.81 | 1 | $ 10.81 | 0 | $ - | $ 10.81 |
| | | | | | | | | | | TOTAL | $ 14,554.22 |